IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRIAN DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-96-DWD |
| | ) |
| FRANK LAWRENCE, | ) |
| M. SIDDIQUI, | ) |
| NURSE REVA, | ) |
| DR. SKIDMORE, | ) |
| JOHN KOCH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections brings this 42 U.S.C. § 1983 action for deprivations of his Eighth Amendment rights related to his requests to be treated for his hearing loss and to receive ADA disability accommodations. Following a screening of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff proceeds on the following two counts:

**Count 1**: Eighth Amendment claim against Lawrence, Reva, Siddiqui, Skidmore, and Koch for deliberate indifference to a serious medical need for failing to treat his deafness.

**Count 2**: Eighth Amendment claim against Koch for excessive force and mistreatment related to Koch spraying Plaintiff with mace in April 2020.

(Doc. 56). Now before the Court are three Motions for Summary Judgment filed by Defendants Siddiqui (Doc. 73), Defendants Lawrence and Reva (Doc. 95) and Defendants

1

Koch and Skidmore (Doc. 100). Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56 arguing that Plaintiff failed to exhaust his administrative remedies before filing this action (Docs. 73, 95, 100).  Defendants filed corresponding memorandums (Docs. 74, 96, 101) and Plaintiff filed responses to each motion (Docs. 89, 98, 105).  For the reasons detailed below, the Motions will be granted.

## Legal Standard

Summary judgment is "proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Defendants bear the initial burden of demonstrating a lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The Court considers the facts in a light most favorable to the non-movant, here Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).  However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 588-90 (7th Cir. 2015); *see Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).  A hearing is not necessary, when, like here, exhaustion or the lack of

exhaustion, is apparent. *Wagoner*, 778 F.3d at 588; *see e.g., Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009); *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). However, an inmate is only required to exhaust those administrative remedies that are available to him. 42 U.S.C. § 1997e(a); *Reid*, 962 F.3d at 329. Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *See e.g. Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Further, an inmate is not required to continue their grievance efforts once it is determined that they have received all requested relief and no further remedies are available. *Thornton v. Snyder*, 428 F.3d 690, 694-97 (7th Cir. 2005).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code. *See* 20 Ill. Admin. Code § 504.800, *et seq* (detailing grievance procedure). In short, if a prisoner has a grievance, he must first seek the assistance of an inmate counselor. *Id.* at § 504.810. If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who submits a recommendation to the chief administrative officer (usually the warden). *Id.* at §§ 504.810; 504.830. If the warden denies the prisoner's grievance, the prisoner has 30 days in which to appeal the decision to the IDOC Director by sending the grievance to the ARB. *Id.* at § 504.850. The Illinois Administrative Code also provides a process for filing emergency grievances, *see* 20 Ill. Admin. Code § 504.840, and certain grievances must be filed directly with the ARB. *See* 20 Ill. Admin. Code § 504.870(a)(4).

Generally, the regulations expect prisons to respond to a grievance within two months, and the ARB to render final decisions within six months, "when reasonably feasible under the circumstances." *See* Ill. Admin Code §§ 504.840, 504.850(e); *Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014). However, these deadlines are "aspirational" and a failure to render a decision within the suggested deadlines does not, by itself, mean an inmate's administrative remedies are "unavailable." *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (noting that that some appeals are more complex and take longer than the suggested time in the regulations).

**Discussion**

Relevant to this matter, Plaintiff submitted two grievances concerning the incidents at issue in this dispute. These grievances are dated November 22, 2019 (No. 279-11-19) and April 19, 2020 (No. 33-5-20) (Doc. 58, p. 20; Doc. 74, pp. 13-19).

The November 22, 2019 Grievance alleges that Plaintiff had sent several letters to Dr. Siddiqui requesting medical attention for his left ear, and further spoke with Nurse Reva multiple times about requesting medical attention, but that Plaintiff was not given medical attention because of Warden Lawrence's orders (Doc. 74, pp. 13-14; *see also* Doc. 58, pp. 20-21). This grievance raises issues related to Plaintiff's Count 1 against Defendants Siddiqui, Reva, and Lawrence. The April 19, 2020 Grievance (No. 33-5-20) also directly relates to the claims at issue in this dispute (Doc. 96, pp. 12-13). Specifically, Plaintiff complains of the April 19, 2020 mace incident with Defendant Koch (*Id.*). Plaintiff further complains of Dr. Siddiqui and Nurse Reva's alleged deliberate indifference to his deafness and Defendant Skidmore's refusal to provide Plaintiff with ADA disability accommodations (*Id.*).

Defendants do not contest that these grievances exhaust the subject matter of Plaintiff's claims. Instead, their arguments concern the timing of the grievances in relation to Plaintiff's initiation of this action. The PLRA requires inmates to fully exhaust their grievances, by completing the exhaustion process, before filing suit. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable.") (emphasis in original)). Therefore, typically, "a prisoner may not file a

5

lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005) ("A district court has no 'discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.'") (internal citations omitted); *see also Mlaska v. Shah*, 428 Fed.Appx. 642, 645 (7th Cir. 2011) (citing *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002) ("[E]xhaustion is a precondition to filing suit; it is not enough for a prisoner litigant to meet this requirement after filing suit.")).

The Seventh Circuit does recognize a limited exception for plaintiffs who raise newly exhausted claims through the filing of an amended complaint in an already pending case. *Id.* at 719-720; *see also Barnes*, 420 F.3d at 673. In these circumstances, the Seventh Circuit has found exhaustion to be proper when a plaintiff exhausts their new claims while existing litigation is ongoing, and then seeks to amend their complaint to raise those new claims once exhaustion is completed. *See Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). However, even in these situations, plaintiffs must first fully exhaust the new claims before filing the amended complaint. *See, e.g., Cannon*, 418 F.3d at 719; *Barnes*, 420 F.3d at 678.

Here, the timeline of events is problematic for Plaintiff. As presented in Plaintiff's sworn declaration (Doc. 58, pp. 38-40) and accompanying grievance documents, the following dates are relevant to Plaintiff's exhaustion efforts:

> On **November 22, 2019**, Plaintiff submitted his November 2019 grievance to staff at Menard (*See* Doc. 58, pp. 20-21, 38-40 at ¶ 4).

6

**Sometime after November 22, 2019**, Plaintiff received a denial of his November 22, 2019 Grievance from Warden Lawrence and appealed the grievance to the Administrative Review Board (Doc. 58, pp. 38-40).[1]

On **January 23, 2020**, Plaintiff filed his original complaint raising his claims against Defendants Siddqui, Reva, and Lawrence (Doc. 6).

**On April 19, 2020**, Plaintiff submitted his April 2020 grievance to the staff at Menard as an emergency grievance (s*ee* Plaintiff's Declaration at Doc. 58, pp. 38-40 at ¶ 4; *see also* Doc. 74, p. 16; Doc. 96, p. 12; Doc. 101, p. 12).

**On May 6, 2020**, the Chief Administrative Officer denied Plaintiff's April 2020 grievance, stating that it was not an emergency, and that Plaintiff should submit the grievance through the standard grievance procedure (Doc. 101, p. 12).

**On May 28, 2020**, the ARB received Plaintiff's April 2020 grievance (Doc. 74, p. 16; Doc. 96, p. 12; Doc. 101, p. 12; *see also* Affidavit of Travis Bayler, Doc. 101, p. 17 at ¶ 9).

**On July 16, 2020,** Plaintiff sought leave to amend his complaint to add the claims against Defendants Koch and Skidmore (Doc. 29).

---

[1]Plaintiff does not provide the precise date on which he received his denial from Menard or the date on which he appealed this denial to the ARB. However, Plaintiff asserts multiple times that he did complete the grievance process at Menard before appealing this November 2019 to the ARB. For example, in his sworn declaration, Plaintiff states:

> Plaintiff wrote an Emergency Grievance on November 22, 2019 One of Two Grievances, that was denied by Warden Lawrence! Plaintiff also wrote an Emergency Grievance on April 19, 2020 that was denied by Warden Wills! Then Plaintiff appealed those Grievances to the Administrative Board and they were never returned. That Plaintiff also sent several letters to the A.R.B. trying to locate all Grievances before filing his complaint.

(Plaintiff's Declaration at Doc. 58, p. 39, at ¶ 4). The Court is entitled to rely on these declarations in ruling on Defendants' motions.  *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).; *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).  Similarly, in Plaintiff's briefing, he confirms that he exhausted all of his grievances at Menard, and only argues that the ARB was untimely in "intentionally ignore[ing]" his appeals (Doc. 105, p. 2, ¶2); *see also* (Doc. 105, pp. 4-5, at ¶¶ 6, 9) (referencing letters Plaintiff sent to the ARB requesting updates from the ARB as to both his November 2019 and April 2020 grievances); *in accord* (Doc. 58, pp. 16-17, 19) (purported letters sent to the ARB on June 22, 2020, June 25, 2020, and July 8, 2020 which allege that Plaintiff's November 2019 grievance had been pending since "December 2019").

7

In sum, Plaintiff argues that he properly exhausted both his November 2019 and April 2020 grievances by first submitting them to Menard for review, and once he received denials, appealing those denials to the ARB. After not receiving responses from the ARB as to each grievance, Plaintiff then filed his complaint and amended complaint. Importantly, here, Plaintiff does not argue that he failed to receive a response to either of his grievances from Menard. Instead, Plaintiff only argues that he never received responses from the ARB. *See* Doc. 105, at ¶ 2 (arguing that all of Plaintiff's grievances were exhausted at Menard but were "intentionally ignored by the ARB").

Defendants do not contest that Plaintiff never received a response from the ARB concerning either grievance. It is therefore undisputed that the ARB did not respond to either of Plaintiff's grievances before Plaintiff filed his original complaint in January 2020 or his amended complaint in July 2020. The parties, however, disagree as to the significance of this undisputed fact. Specifically, Defendants contend that Plaintiff's filing suit before receiving responses from the ARB runs afoul of the plain language of the PLRA. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable."). Whereas Plaintiff argues that his administrative remedies were "unavailable" because of the ARB's failure to timely respond to his grievances before he filed either complaint.

A non-response to a properly filed grievance can certainly render an inmate exempt from further exhaustion requirements. *See e.g. Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (Administrative remedies become "unavailable" to prisoners when

8

prison officials fail to respond to a properly filed grievance); *see also Reid v. Balota*, 962 F.3d 325, 329-31 (7th Cir. 2020) ("An administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies.") (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

As mentioned above, the Illinois regulations generally expect prisons to respond to grievances within two months, and the ARB to render final decisions within six months "when reasonably feasible under the circumstances." *See* Ill. Admin. Code §§ 504.840; 504.850(e). The Seventh Circuit has concluded that inmate remedies do not become "unavailable" simply because a decision from the Administrative Review Board takes longer than the stated time period. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004); *Woods v. Forehand*, 2015 WL 1188326, at *3 (S.D. Ill. Mar. 12, 2015) (it is "widely accepted that the grievance process does not become unavailable simply because a response is tardy."). As such, there is no precise formula for determining when administrative remedies become unavailable. Nevertheless, it is generally accepted by courts in this Circuit that prisoners fail to exhaust their administrative remedies when they file suit before the response deadline. *See Woods v. Forehand*, 2015 WL 1188326, at *3 (S.D. Ill. Mar. 12, 2015) (collecting cases); *in accord Mlaska v. Shah*, 428 Fed. Appx. 642, 645 (7th Cir. 2011) (suggesting that prisoners must allow the prison "a reasonable time to respond" to grievances).

Here, Plaintiff does not argue that he failed to receive timely responses from Menard, but only contests the ARB's failure to render timely decisions. Illinois

9

regulations suggest that the ARB should render decisions within six months. *See* Ill. Admin. Code § 504.850(e). At best Plaintiff waited 62 days from the date he submitted his November 22, 2019 grievance to the ARB before filing his original complaint on January 23, 2020.[2] Plaintiff then waited only 47 days between the date the ARB received his April 22, 2020 grievance on May 29, 2020 before seeking leave to file his amended complaint on July 15, 2020. Under the specific circumstances here, the Court concludes that the Plaintiff failed to wait a sufficient amount of time before filing suit.

Accordingly, Defendants' Motions for Summary Judgment on the issue of exhaustion (Docs. 73, 95, 100) are **GRANTED**. Plaintiff's claims against all Defendants are **DISMISSED, without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: February 24, 2022

_____
DAVID W. DUGAN
United States District Judge

---

[2] Again, this November 22, 2019 is the date Plaintiff submitted his grievance to Menard and likely does not account for the time the grievance was under review at Menard or the time it took for Plaintiff to mail his appeal to the ARB. However, because the parties do not provide a date certain for when this grievance was denied or appealed to the ARB, the Court relies on this date in its calculations.